IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EIZEN FINEBURG & MCCARTHY, P.C., <br><br> Plaintiff, <br><br> v. <br><br> IRONSHORE SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | CIVIL ACTION <br> NO. 16-2461 |

**OPINION**

**Slomsky, J.**                                                                                   **January 18, 2017**

## I.    INTRODUCTION

This case concerns an insurance coverage dispute between Plaintiff Eizen Fineburg & McCarthy, P.C. ("the Firm"),[1] and its insurer, Defendant Ironshore Specialty Insurance Company ("Ironshore"). Plaintiff alleges that Ironshore failed to honor the terms of the Firm's professional liability insurance contract, and exhibited bad faith in its handling of the Firm's claim in violation of 42 Pa. Const. Stat. Ann. § 8371[2] and the common law. (Doc. No. 1 at 13-30.)

---

[1] Eizen Fineburg & McCarthy, P.C. is now known as Fineburg Law Associates, P.C.

[2] 42 Pa. Const. Stat. Ann. § 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

1

Presently before the Court is Ironshore's Motion to Bifurcate.  (Doc. No. 13.)  Ironshore requests that the Court sever the breach of contract claim from the bad faith claims and stay the latter.  (Id.)  For reasons discussed below, Ironshore's Motion will be denied.

## II.     BACKGROUND

On January 30, 2011, Plaintiff Eizen Fineburg & McCarthy, P.C., now known as Fineburg Law Associates, P.C. ("the Firm"), purchased a policy of insurance from Defendant Ironshore Specialty Insurance Company ("Ironshore").  (Doc. No. 1 at 14.)  The policy was issued for a one-year term, starting on January 30, 2011 and ending on January 30, 2012.  (Id. at 15.)  It contained a limit of liability of $5,000,000 per claim.[3]

During this term, the Firm made two requests to Ironshore seeking insurance coverage in separate, but related actions.  (Id.)  First, on July 8, 2011, Ironshore covered the Firm's claim relating to a bankruptcy matter in the Northern District of Texas involving one of the Firm's clients against the debtor, FirstPlus Financial Group, Inc.  (Id. at 15; Doc. No. 6 at 3.)  Second, on December 21, 2011, Ironshore rejected the Firm's claim relating to a criminal matter in the District of New Jersey involving one of the Firm's attorneys, Gary McCarthy.  (Doc. No. 1 at 16.)  McCarthy had been indicted a few months earlier on suspicion of committing various crimes in connection with his representation of companies that were purchased by FirstPlus Financial Group, Inc.  (Id. at 15.)  These charged offenses included conspiracy, securities fraud, wire fraud, and money laundering.  (Id.)  The Firm requested that Ironshore pay the legal costs associated with the criminal investigation and indictment of McCarthy, but Ironshore refused to

---

42 Pa. Const. Stat. Ann. § 8371.

[3] The Complaint states that the policy had "a Limit of Liability of $5,000,000 per claim and in the aggregate, inclusive of claim expenses, subject to a $25,000 deductible."  (Doc. No. 1 at 15.)

do so. (Id. at 15-16.) More than two years later, on July 3, 2014, a jury acquitted McCarthy of all criminal charges, but only after the Firm incurred attorneys' fees in excess of $1,320,000 to defend McCarthy in the criminal case. (Id. at 21.)

On April 26, 2016, the Firm initiated this action against Ironshore in the Court of Common Pleas of Philadelphia County. (Id. at 1, 30.) It sought to recover the expenses associated with defending McCarthy in the criminal case. (Id. at 13-30.) In Count I of the Complaint, Plaintiff alleges a breach of contract claim against Ironshore for failing to honor the terms of the professional liability insurance policy. (Id. at 18-20.) In Count II, Plaintiff raises a bad faith claim against Ironshore, alleging that Defendant violated 42 Pa. Const. Stat. Ann. § 8371. (Id. at 20-24.) In Count III, Plaintiff alleges a bad faith claim against Ironshore under the common law. (Id. at 24-27.) In particular, Plaintiff asserts that Ironshore acted in bad faith by (1) failing "to conduct a reasonable investigation" into Plaintiff's request for coverage; (2) unreasonably delaying a decision on Plaintiff's request; (3) failing "to interpret ambiguous policy language exclusively drafted by Defendant in Plaintiff's favor;" and (4) failing to acknowledge and properly settle Plaintiff's reasonable proof of loss. (Id. at 18-27.)

On May 19, 2016, Ironshore removed the action to this Court. On October 13, 2016, a scheduling conference was held during which the parties discussed discovery, settlement, and trial, among other matters. (Doc. No. 11.) On November 29, 2016, Ironshore filed the Motion to Bifurcate and Stay the Bad Faith Claims. (Doc. No. 13.) Plaintiff filed a Response in Opposition to Defendant's Motion on December 12, 2016. (Doc. Nos. 14, 15.) On December 28, 2016, Ironshore filed a Reply. (Doc. No. 17.) The Motion is now ripe for review.

**III.   STANDARD OF REVIEW**

Bifurcation is permitted by Federal Rule of Civil Procedure 42(b).  Rule 42(b) states as follows:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial.

Fed. R. Civ. P. 42(b).  The decision to bifurcate, or separate, claims "is a matter to be decided on a case-by-case basis and must be subject to an informed discretion by the trial [court] in each instance."  Lis v. Robert Packer Hosp., 579 F.2d 819, 824 (3d Cir. 1978).  A court's ruling on whether to bifurcate "requires balancing . . . several considerations, including the convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation."  Zinno v. Geico Ins. Co., No. 16-792, 2016 WL 6901697, at *1 (E.D. Pa. Nov. 21, 2016) (citations omitted).  The moving party bears the burden of proving that bifurcation is warranted.  Yellowbird Bus Co., Inc. v. Lexington Ins. Co., No. 09-5835, 2010 WL 2766987, at *8 (E.D. Pa. July 12, 2010).

**IV.   ANALYSIS**

Ironshore contends that Plaintiff's statutory and common law bad faith claims set forth in Counts II and III of the Complaint should be bifurcated from Plaintiff's breach of contract claim in Count I for purposes of both discovery and trial.  (Doc. No. 13 at 1.)  In essence, Ironshore argues that the crux of this dispute is contractual, and that the bad faith claims will fail if Defendant is successful in defending itself on the breach of contract claim.  (Doc. No. 13-1 at 2.)  Therefore, it would be wasteful and unnecessary to conduct discovery on the bad faith claims at this time.  (Id. at 2-3.)  Plaintiff opposes the Motion to Bifurcate, arguing that its "bad faith claims do not rise or fall entirely on the success of its breach of contract claim, and therefore

4

staying bad faith discovery would not save time or resources." (Doc. No. 14 at 4.) Plaintiff argues that bifurcation would not expedite or economize the litigation, but would rather delay, draw out, and waste judicial resources. (Id.) The Court agrees with Plaintiff.

As noted above, a court's decision to bifurcate requires balancing several considerations, including convenience, prejudice, and judicial economy. Zinno, 2016 WL 6901697, at *1.

### A. Convenience

As noted, Ironshore contends that it will be more convenient for the parties to litigate the breach of contract claim separately because the Firm's bad faith claims "will necessarily fall by the wayside if the Court sustains Ironshore's coverage position." (Doc. No. 13-2 at 10.) A bad faith claim based solely on an underlying breach of contract claim generally will fail if a court determines that an insurer did not have a duty to defend the insured based on the contractual agreement. See Rohm and Haas Co. v. Utica Mut. Ins. Co., No. 07-584, 2008 WL 2517176, at *2 (E.D. Pa. Jun. 23, 2008). However, "the concept of 'bad faith'" can extend "beyond an insured's denial of a claim in several limited areas." Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). "One of those areas concerns insurers that unreasonably delay the evaluation of their insureds' claims, even if the insurer's ultimate assessment of the claim proves to be correct." Wagner v. Allstate Ins. Co., No. 14-7326, 2016 WL 233790, at *3 (E.D. Pa. Jan. 19, 2016). Another area occurs "when the plaintiff's bad faith claim is based on more or other than just the insurance company's refusal to provide coverage." Rohm and Haas Co., 2008 WL 2517176, at *2. In fact, a "sizeable majority of the federal district

courts in Pennsylvania have refused to stay bad faith claims against insurers until the underlying coverage claims can be resolved."[4]  Wagner, 2016 WL 233790, at *4.

In its Complaint, the Firm claims that Ironshore exercised bad faith in Counts II and III in violation of statutory and common law.  (Doc. No. 1 at 20-27.)  The Firm alleges that Ironshore acted in bad faith by: (1) failing "to conduct a reasonable investigation" into Plaintiff's request for coverage; (2) unreasonably delaying a decision on Plaintiff's request; (3) failing "to interpret ambiguous policy language exclusively drafted by Defendant in Plaintiff's favor;" and (4) failing to acknowledge and properly settle Plaintiff's reasonable proof of loss.  (Id. at 18-27.)  The first two bad faith actions include conduct separate from the breach of contract claim.  Failing to conduct a reasonable investigation will include an examination of Ironshore's conduct apart from its interpretation of the professional liability insurance policy, and involves, among other things, delving into any failure to investigate the Firm's claim, any unfounded refusal to pay proceeds of a policy, and any failure to communicate with the Firm.  The second action—unreasonably

---

[4]  See, e.g., Griffith v. Allstate Ins. Co., 90 F.Supp.3d 344, 346-47 (M.D. Pa. 2014) (finding that the issues in the breach of contract and bad faith claims were so "significantly intertwined" that bifurcation was not warranted); Cooper v. Metlife Auto & Home, No. 13-687, 2013 WL 4010998, at *3 (W.D. Pa. Aug. 6, 2013) (recognizing the existence of a "substantial overlap in issues and evidence" that counseled against a stay of the insured's bad faith claim from its breach of contract claim); Craker v. State Farm Mut. Auto Ins. Co., No. 11-0225, 2011 WL 4565582, at *2 (W.D. Pa. Sept. 29, 2011) (denying an insurer's motion to bifurcate and stay the bad faith claims against it because doing so would result in "inefficiencies and increased costs for the parties."); Yellowbird Bus Co. v. Lexington Ins. Co., No. 09-5835, 2010 WL 2766987, at *8 (E.D. Pa. July 12, 2010) (finding that discovery pertaining to the breach of contract claim would substantially overlap with the bad faith claim); Suscavage v. Nationwide Mut. Ins. Co., No. 3:05-501, 2008 WL 2278082, at *2 (M.D. Pa. June 30, 2008) (finding bifurcation of an insured's bad faith claims inappropriate where doing so "would simply be a waste of judicial resources."); Frederick & Emily's, Inc. v. Westfield Grp., No. 03-6589, 2004 WL 1925007, at *2 (E.D. Pa. Aug. 27, 2004) (finding that "all the factors weigh heavily against sever[ing]" Plaintiff's bad faith claim); Zurich Ins. Co. v. Health Systems Integration, Inc., No. 97-4994, 1998 WL 211749, at *3 (E.D. Pa. Apr. 30, 1998) (disallowing bifurcation of an insured's bad faith claims where the insurer "brought forward no creditable justification for either severance or stay.").

delaying a decision—also involves investigating Ironshore's practices extraneous to the policy itself. Accordingly, a verdict in Ironshore's favor on the breach of contract claim may not obviate the need to try Plaintiff's bad faith claims. Contrary to Ironshore's assertions, it would be more convenient to try the breach of contract and bad faith claims together.[5]

### B. Prejudice

Ironshore next asserts that it will be prejudiced by incurring significant expense if it must defend itself against the breach of contract claim and the bad faith claims simultaneously. (Doc. No. 13-2 at 9.) Ironshore complains that discovery on the bad faith claims will extend "well beyond" that needed for the breach of contract claim, that it will incur significant costs in preparing bad faith witnesses, and that discovery relating to the bad faith claims will raise attorney-client and work-product privilege issues. (Doc. No. 17 at 6.) These concerns, however, do not convincingly show that Ironshore will be prejudiced. In fact, the party facing the prospect of prejudice in this case is Plaintiff, not Ironshore.

First, discovery relating to the bad faith claims will not extend "well beyond" discovery required for the contractual claim, as Ironshore contends. The same discovery will be pertinent to many issues in this case. The claims concern Ironshore's refusal to provide coverage under the professional liability insurance policy to fund McCarthy's legal defense in the criminal case. Discovery will include, for example, document review and witness depositions on Ironshore's investigation and refusal to provide coverage. (Doc. No. 14 at 14-15.) Such discovery relates to

---

[5] In its Reply (Doc. No. 17), Ironshore agrees that many Pennsylvania courts have not allowed bifurcation of an insured's bad faith claims from its breach of contract claim. (Doc. No. 17 at 3.) Ironshore contends, however, that a court must assess the bad faith claims on the merits to determine if bifurcation is warranted. Here, at this early stage in the litigation, the Court cannot do so. Instead, the Court can only decide whether bifurcation of the claims promotes convenience for the parties, limits any prejudice the parties may encounter, and furthers judicial economy.

both the contractual and bad faith allegations.  Plaintiff is the party that will be prejudiced if it is forced to incur significant expense to conduct two completely separate rounds of discovery involving many of the same issues, witnesses, and documents.

Second, Ironshore's contention that it will be prejudiced by incurring costs associated with deposing bad faith witnesses is unavailing.  Although the bad faith claim may require additional witnesses to discuss an issue such as damages, this extra effort does not necessarily mean that prejudice automatically exists.  Ironshore may still eventually have to depose and prepare these additional witnesses for a second trial on Plaintiff's bad faith claims, since these claims are not dependent upon the success of the breach of contract claim.  Therefore, Ironshore's argument regarding the need to depose extra witnesses is not persuasive.

Lastly, Ironshore's assertion that discovery on the bad faith claims will raise privilege issues does not demonstrate prejudice.  District courts have recognized that a "mere claim of bad faith is not enough to shatter the work-product privilege."  See, e.g., Wagner, 2016 WL 233790, at *3.  Allowing the contractual and bad faith claims to proceed together means that Ironshore may be called upon to assert and prove its entitlement to attorney-client and work-product protection—a task which may already be required of it in defending against the contractual claim.  In light of these concerns, this Court does not find that Ironshore will be prejudiced in allowing all claims to proceed at one time.

### C. Judicial Economy

Finally, Ironshore argues that bifurcation will economize the litigation. (Doc. No. 13-1 at 7.)  To the contrary, "[b]ifurcation would essentially double the life of this action requiring a second discovery period, more dispositive motions, more pretrial motions, and a completely separate second trial."  Griffith v. Allstate Ins. Co., 90 F. Supp. 3d 344, 347 (M.D. Pa. 2014).

Ironshore correctly notes that the contractual and bad faith claims present distinct legal issues. However, Plaintiff also accurately points out that the facts underlying the contractual and bad faith claims overlap in many respects. While the focus of the bad faith claims is on Ironshore's conduct in denying coverage, rather than the contract itself, Ironshore's investigation "did not occur in a vacuum." Wagner, 2016 WL 233790, at *3.

Determining whether Ironshore's investigation was performed in good faith requires a jury to find that Ironshore's conduct in denying coverage was either reasonable or unreasonable. The jury will be examining the circumstances surrounding the criminal case, the request for coverage, and the refusal to provide it. Bifurcating the bad faith claims would subject the Firm to the time and expense of having to participate in two separate rounds of discovery, two cycles of motion practice, and two separate jury trials. In this case, "separating potentially overlapping discovery and trials, either or both of which might proceed independently, would be the opposite of expeditious resolution of the litigation." Rohm and Haas Co., 2008 WL 2517176, at *4. In light of these considerations, this Court finds that bifurcation is not warranted.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Bifurcate (Doc. No. 13) will be denied. An appropriate Order follows.